[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
RE: PLAINTIFF'S MOTION TO REARGUE CODED NO. 132 AND DEFENDANT'S MOTION TO CORRECT CODED NO. 133
Many of the facts that give rise to the above two motions are not in dispute. A memorandum of decision was issued by this court on June 15, 1998, following a limited contested trial. On page thirteen of that memorandum of decision, under paragraph B 1, the court entered the following order:
 1. The plaintiff is ordered to pay to the defendant alimony in the sum of $700 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) November 5, 2005 — the youngest child will be eighteen on the above date and the defendant will then have less need for alimony than she presently has.
The youngest minor child of the parties, in fact, turns eighteen on November 5, 2009, rather than November 5, 2005. The defendant, in the motion to correct, seeks to have the court correct the alimony termination date to be November 5, 2009. The plaintiff, in his motion to reargue, makes the following argument regarding this issue. CT Page 8951
 The Court then states that this is the birthdate of the youngest child. The Plaintiff requests that the Court remove the phrase "the youngest child will be 18 on the above date and the Defendant will have less need for alimony than she presently has." First, this is not the birthdate of the youngest child. Secondly, termination of alimony on the birthdate of a minor child may violate the regulations of the Internal Revenue Code in that the IRS is likely to find that this Order is in the nature of additional child support and therefore, the alimony would be non-deductible by the Plaintiff and taxable to the Defendant. The Plaintiff does not believe that this is the intent of the Court.
The court grants the defendant's motion to correct by changing the reference on page thirteen, paragraph B 1(c) to read as follows:
 (c) November 5, 2009 — the youngest child will be eighteen on the above date and the defendant will then have less need for alimony than she presently has.
In the event the IRS disallows the alimony payment as a deduction to the plaintiff, then the plaintiff can move for a modification of alimony and it will be left up to the trial court as to whether that ruling by the Internal Revenue Code constitutes a substantial change in circumstances to justify a modification of the alimony order. It is the court's intent that alimony payments be deductible to the plaintiff and taxable to the defendant.
In paragraph E 16 of this court's memorandum of decision, dated June 15, 1998, the court entered the following order.
 16. The court awards 50 to the defendant 50 percent of the pension benefits to which the plaintiff is entitled, as of the date he retires. This is to take place by QDRO. The court finds that the plaintiff's interest in his defined pension plan is vested. The plaintiff is ordered to elect a joint and survivorship option, if such option is available under his plan, by July 20, 1998. The defendant is responsible for preparing the appropriate QDRO documents. The court retains jurisdiction over any disputes that may exist regarding such documents.
The plaintiff, in his motion to reargue, makes the following argument regarding this order: CT Page 8952
 B. In paragraph E-16 the Court awarded the Defendant fifty percent (50%) of the pension benefits to which the Plaintiff is entitled, as of the date he retires. This sentence may be interpreted one of two ways. Does the Court intend to award the Defendant one-half of all pension benefits which the Plaintiff accrues for the next thirty-five (35) years? Conversely, does the Court intend that the Defendant will receive one-half of the current pension benefits of the Plaintiff when he retires?
One of the exhibits before this court at the time of trial, plaintiff's exhibit No. 10, provided information regarding the plaintiff's pension plan with Hitachi. His estimated accrued benefits based on pay and service through March 31, 1997, One of the exhibits before this court at the time of trial, plaintiff's exhibit No. 10, provided information regarding the plaintiff's pension plan with Hitachi. His estimated accrued benefits based on pay and service through March 31, 1997, is $974 monthly. His projected benefits, assuming he continues working to May 1, 2027, and his pay remains at the 1996 level, is $4123 monthly.
The parties are in dispute as to whether the 50 percent awarded to the defendant is intended to be 50 percent of the $974 monthly, 50 percent of the $4123 monthly, or 50 percent of whatever amount it might be in excess of $4123, if the plaintiff's pay should be at a higher level. It should be kept in mind that the $974 monthly benefit, as well as the $4123 monthly benefit, is based on the plaintiff's pay and service through March 31, 1997. Neither party submitted to the court any updated information beyond March 31, 1997. The court's memorandum of decision was filed on June 15, 1998. It is the intention of the court, in paragraph E 16, to award to the defendant 50 percent of the plaintiff's projected benefits, assuming he continues working until May 1, 2027, based on his projected benefit as of June 15, 1998. That amount will be one-half of $4123 or whatever greater amount his projected benefit is as of June 15, 1998. It is not the intention of this order for the defendant to share in any increases in the plaintiff's pension benefit which result from pay increases that he may receive after June 15, 1998.
The plaintiff, in his motion to reargue in paragraph C, raised the issue of IRS refund checks. The parties have entered into a stipulation regarding that matter, which the court approves of.
The plaintiff, in paragraph B of his motion to reargue, CT Page 8953 states as follows:
 D. In Paragraph F-1 of the Memorandum of Decision provides that no attorney's fees are awarded in favor of either party. After making this finding, is it the Court's intent that the Plaintiff should be given credit for all attorney's fees which have been paid to the Defendant's Counsel as a result of the Defendant withdrawing sums from the accounts which have been awarded to the Plaintiff? In addition, should the Plaintiff be given credit for attorney's fees paid to Counsel for the Defendant since the close of the trial and before the issuance of the Memorandum of Decision?
The two accounts that were awarded to the defendant that are referred to in that paragraph were a First Union checking account and a First Union savings account, both of which were in the plaintiff's name only. There is no evidence that the defendant withdrew any sums of money from either of those two accounts between the date the trial ended and the date the court's decision was rendered. Further, the plaintiff should not be given credit for any attorney's fees paid by the defendant to her attorney up until the date the trial was completed.
Axelrod, J.